IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| R.J. CORMAN RAILROAD COMAPNY/TENNESSEE TERMINAL LLC, <br>                 **Plaintiff,** <br> v. <br><br> MALLORY ALEXANDER INTERNATIONAL LOGISTICS LLC; MALLORY DISTRIBUTION CENTERS LLC; AND PACIFIC COAST PRODUCERS, <br>                 **Defendants.** | Case No. 2:22-cv-2525-JTF-tmp |

**ORDER DENYING DEFENDANT'S MOTION TO STAY AND REFER THE MATTER TO THE SURFACE TRANSPORTATION BOARD FOR MEDIATION AND RESOLUTION OF CERTAIN QUESTIONS**

Before the Court is Defendant Pacific Coast Producers' ("PCP") Motion to Stay and Refer the Matter to the Surface Transportation Board for Mediation and Resolution of Certain Questions, filed on November 17, 2022. (ECF No. 33.) The motion was held in abeyance while the parties pursued mediation with the Surface Transportation Board's ("STB") Rail Customer Public Assistance Program. (ECF No. 42.) Ultimately, the Rail Customer Public Assistance Program declined to assist with mediation and the parties extended a temporary stay while pursuing informal settlement. (ECF No. 45.) These discussions were unsuccessful as well. (ECF No. 51.) Pursuant to Court order, Plaintiff R.J. Corman Railroad Company/Tennessee Terminal LLC ("Corman") filed a response in opposition to the motion on May 15, 2023. (ECF No. 55.) Defendant Mallory Alexander International Logistics LLC does not oppose the motion. (ECF No. 33, 15.) For the below reasons, PCP's Motion is **DENIED**.

      **I.**       **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

1

The present case involves a complex commercial dispute between three parties, each representing a different step in the railroad supply chain. Plaintiff Corman is a "common carrier by rail," or more simply a railroad. (ECF No. 40, 1.) Railroads supply rail cars to suppliers who ship goods along the railroad. Defendant PCP is such a supplier, specifically an agricultural cooperative based in Lodi, California, that sends goods along a route involving two railroads: BNSF Railway Company and Corman. Corman receives PCP's goods from BNSF at an interchange and then ships them to Defendant Mallory's distribution facility. Mallory operates as a "warehouseman," a term for operations that "receive goods as destination agents . . . for multiple customers" who then unload those goods from a railroad's railcars "for further distribution and return the empty cars to the railroad." (ECF No. 55, 2.)

A key part of this process is "demurrage." According to the complaint, demurrage refers to "practices and charges for a customer's inability to receive and its detention of railcars." (ECF No. 40, 3.) In order to ensure that a railroad's railcars are efficiently unloaded and returned to the railroad, which in turn prevents railroad congestion and delay, railroads impose demurrage charges on customers who are "not prepared to receive the railcars when they arrive" and are forced to detain them for a time before they can be unloaded. (*Id.* at 2.) Customers receive a certain amount of "free time," but any delays beyond that free time incur demurrage charges. These charges are established in documents known within the industry as "tariffs." (*Id.* at 3.) A railroad's tariff is an open contract: while customers can individually contract around the tariff, a failure to do so typically constitutes acceptance of the tariff's charges once business commences. Federal law requires that tariffs, and demurrage in general, be reasonable and assigns regulation of demurrage practices and rates to the STB. 49 U.S.C. § 10501.

Corman alleges that Mallory and PCP are responsible for unpaid demurrage charges that

2

accrued due to Mallory's failures to receive and unload Corman railcars carrying PCP's goods within the free time allowed in their tariff. (ECF No. 40, 3.) Corman filed suit on August 12, 2022. (ECF No. 1.) PCP filed an answer on November 16, 2022, (ECF No. 30), and then a crossclaim against Mallory on November 30, 2022, (ECF No. 39). Mallory ultimately filed an answer containing a crossclaim against PCP on May 15, 2023. (ECF No. 54.) PCP also filed the present motion on November 17, 2022, requesting that the Court stay the case and refer certain questions raised by the litigation to the STB. (ECF No. 33.) This motion was opposed by Corman, but all parties ultimately agreed to a separate stay while they pursued potential mediation with the STB's Rail Customer Public Assistance Program ("RCPA"). (ECF No. 42.) The RCPA declined to mediate the case and the parties engaged in informal settlement discussions and limited document disclosure while the case was stayed. These talks were unsuccessful and the case resumed active status on April 13, 2023. (ECF No. 51.) Thus, the Court must now consider whether to stay the case again and "refer" certain questions to the STB for resolution.

## II.     LEGAL STANDARD

PCP moves to stay the case under the doctrine of "primary jurisdiction." Primary jurisdiction "applies to claims properly cognizable in court that contain some issue within the special competence of an administrative agency." *Zimmerman v. 3M Company*, 542 F.Supp.3d 673, 682-83 (W.D. Mich. 2021) (quoting *Reiter v. Cooper*, 507 U.S. 258, 268 (1993)). The doctrine is malleable and rarely applied; "in every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *United States v. Any and All Radio Station Transmission Equipment*, 204 F.3d 658, 664 (6th Cir. 2000) (quoting *United States v. Western Pacific R. Co.*, 352 U.S. 59, 64 (1956)). Those reasons include "(1) to advance regulatory uniformity; (2) to answer a question

3

within the agency's discretion; and (3) to benefit from technical or policy considerations within the agency's expertise." *United States ex rel. Wall v. Circle C Const., L.L.C.*, 697 F.3d 345, 352 (6th Cir. 2012) (quoting *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466 (6th Cir. 2010)). "In most instances where rates, rules or practices are attacked as unreasonable or discriminatory the appropriate administrative agency should decide the question initially." *Crain v. Blue Grass Stockyards Co.*, 399 F.2d 868, 872 (6th Cir. 1968). However, other circuits have found that these considerations must still be weighed against concerns of judicial efficiency and delay. *Reid v. Johnson & Johnson*, 780 F.3d 952, 967-68 (9th Cir. 2015). The Court should also consider previous applications or requests to be heard before the STB, as "common sense tells us that even when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation." *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 761 (9th Cir. 2015).

Primary jurisdiction operates through the District Court staying the case before them "so as to give the parties reasonable opportunity to 'refer' the matter to an agency seeking an administrative ruling." *Circle C. Const.*, 697 F.3d at 352 (quoting *United States v. Haun*, 124 F.3d 745, 749 (6th Cir. 1997)). "Refer" is used loosely here because there is no true referral to the agency, "what actually happens is the court stays or dismisses the proceedings to allow the parties a reasonable opportunity to apply to the agency for a ruling." *CSX Transportation, Inc. v. Piper Warehouse, Inc.*, No. 1:16-cv-1805-RLY-DML, 2017 WL 3106284, at *4 (S.D. Ind. Jun. 15, 2017) (citing *Reiter*, 507 U.S. at 269 n.3)). Thus, an agency's consideration of a case stayed under primary jurisdiction is still somewhat discretionary, although such stays and applications are treated routinely as complaints. *South-Tec Dev. Warehouse, Inc. & R.R. Donnelley & Sons Co. – Petition for Declaratory Order – Ill. Cent. R.R. Co.*, STB Docket No. 42050, 2000 WL 210698, at

4

*1 (S.T.B. Feb. 14, 2000).

### III.    LEGAL ANALYSIS

PCP presents the Court with ten questions they believe should be referred to the STB for resolution under the primary jurisdiction doctrine. Given their centrality to the present Motion, the Court will list them in full below. PCP states that the STB must first determine whether:

1. Plaintiff can assess, impose or collect demurrage charges against PCP in the absence of any agreement by PCP to be liable for such charges.

2. Demurrage is attributable to PCP as a shipper located in a different state from where the demurrage allegedly accrued by a different receiver and/or intermediary.

3. Plaintiff's demurrage rates and/or charges are reasonable and/or serve the purposes set forth in 49 U.S.C. § 10746.

4. The manner in which Plaintiff calculates its demurrage charges is reasonable and/or serves the purposes set forth in 49 U.S.C. § 10746, including, but not limited to, the vagueness, ambiguity, and lack of information included in invoicing, days added beyond from when cars are placed and released, and/or inclusion of pictures ("screenshots") from cell phones rather than detailed invoicing.

5. The rules and/or practices pursuant to which Plaintiff purports to impose demurrage charges are reasonable and/or serve the purposes set forth in 49 U.S.C. § 10746.

6. Plaintiff's imposition of demurrage charges is reasonable and/or serves the purposes set forth in 49 U.S.C. § 10746 if Plaintiff's own delays or other actions are responsible for the backup of railcars (i.e., bunching), or if other Class I Railroads have evaded the STB's rule on Demurrage Billing Requirements promulgated at 49 C.F.R. 1333, by tasking Plaintiff with demurrage.

7. Plaintiff may assess demurrage charges against PCP and/or Mallory, when Plaintiff's failure and/or refusal, if any, to provide reasonable switching services, or any other conduct, constitutes a violation of 49 U.S.C. § 11101, such that PCP's damages arising from such violation may be set off against any amounts due from PCP and/or Mallory to Plaintiff.

8. Plaintiff provide insufficient notice of major tariff changes, including by suing for charges assessed in 2020-2022 for almost two years prior to the Tariff included as Exhibit A to Plaintiff's Complaint that purports to be effective as of February 1, 2022.

>9. Plaintiff improperly included non-demurrage charges (i.e., other Tariff charges) in its claims as an improper "hidden charge."
>
>10. Liability is excused in part as caused by a "Force Majeure Event" as defined by Plaintiff's 2022 Tariff, including, but not limited to authority of law as it relates to COVID-19 lockdowns, supply chain issues, and/or union workers' rights, weather impediments, or other like causes beyond PCP's and/or Mallory's reasonable control?

(ECF No. 33, 12-13.) PCP argues that under the ICC Termination Act of 1995 ("ICCTA"), the STB has exclusive jurisdiction over the regulatory scheme these questions arise under, and that "the circumstances in this case give rise to several questions about the reasonableness of Plaintiff's demurrage charges, namely whether they can be attributed to PCP." (*Id*. at 7.) Corman disagrees and contends that referral to STB is premature. They argue PCP does not cite any facts to support that these allegedly specific and technical questions are at issue. Corman instead characterizes the questions as rephrased affirmative defenses attempting to overcomplicate the case. Both parties cite numerous cases, both in and out of circuit, that they claim supports their position.

As a preliminary observation, the Court would note that this case has already been stayed for many months, while the parties sought mediation with the STB. The STB declined to mediate. The Court has not been provided with reasoning as to why the STB declined and understands that the referral process pursuant to primary jurisdiction is a different matter than seeking mediation with the RCPA. However, the fact that the STB already declined to bring this case within its expertise is a unique, important factor that "common sense" suggests weighs against staying and referring. *Astiana*, 783 F.3d at 761; *see also AT&T Communications of Virginia, Inc. v. Bell Atlantic-Virginia, Inc.*, 35 F.Supp.2d 493, 498 (E.D. Va. 1999) (noting "whether a prior application to the agency has been made" as a factor in whether to apply primary jurisdiction). This already-lengthy stay implicates concerns of judicial economy as well. This case was filed on August 12, 2022, and has made essentially no progress since due to numerous stays, extension of stays, and

attempted mediation with the STB. The Court has not yet even entered a Scheduling Order after almost nine months of litigation. Formal discovery has not yet begun. Referral would begin an entirely separate litigation that must run in full and enlists administrative law judges from a separate agency to handle discovery disputes. *Omaha Pub. Power Dist. v. Union Pac. R.R.*, Docket No. NOR 42173, 2022 WL 17175614, at *1 (S.T.B. Nov. 21, 2022). "Efficiency" cautions against staying and referring as well. *Reid*, 780 F.3d 967 (citing *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007)).

On the other hand, the weight of case law suggests that challenges regarding the reasonableness of demurrage practices or charges are often referred to the STB. *See Norfolk Southern Railway Company v. Judge Warehousing, LLC*, 409 F.Supp.3d 1350, 1355-56 (S.D. Ga. 2019) ("Numerous courts have found that questions regarding the reasonableness of tariffs, rules, regulations, and practices of carriers falls within the expertise of the ICC, now the STB.") (collecting cases); *Springfield Terminal Ry. Co. v. Fore River Warehousing and Storage Co., Inc.*, Civil No. 07-52-P-S, 2007 WL 2344970, at *6 (D. Me. Aug. 15, 2007) ("[T]here is precedent for referral to the STB if questions regarding the reasonableness of rates charged via tariff by a railroad subject to the STB's jurisdiction, including demurrage rates.") (collecting cases); *Crain*, 399 F.2d at 872 ("In most instances where rates, rules or practices are attacked as unreasonable or discriminatory the appropriate administrative agency should decide the question initially.") (collecting cases). This is because challenging the reasonableness of a particular practice in this context often involves "technical or policy considerations that are beyond the court's ordinary competence and within the agency's particular field of expertise." *Union Pacific R. Co. v. FMC Corp.*, No. CIV.A. 99-CV-200, 2000 WL 134010, at *2 (E.D. Pa. Feb. 3, 2000). Determining whether a practice is reasonable may involve comparing one railroad's practices to industry

standards or regulatory guidance, matters which the STB is best-equipped to handle. While Courts are the assigned forum through which demurrage cases are handled, they are often handled with guidance from the STB regarding reasonable practices. *CL Consulting and Management Corporation – Petition for Declaratory Order*, 2017 WL 363384, at *2 n.5 (S.T.B. Jan. 23, 2017) (noting that 49 U.S.C. § 11705(a) requires cases over unpaid demurrage fees to be brought as civil actions in court). This factor weighs in favor of a stay.

However, as Corman points out, matters are often not referred to the STB until the issues are narrowed and specific questions can be presented. *See, e.g., Union Pacific R. Co.*, 2000 WL 134010, at *2 ("Did Union Pacific comply with applicable STB regulations when it began to apply demurrage charges as of September 1, 1997, on cars delivered to FMC at the Pocatello site where no such charges had been imposed previously?"). Guidance from the relevant agency is helpful in cases where the Court must ultimately make specific factual determinations or weigh the evidence, but such steps do not become necessary "until this case reaches the summary judgment stage." *Chapman v. Portfolio Recover Associates, LLC*, No. 2:18-cv-426, 2018 WL 11317096, at *4 (E.D. Va. Dec. 14, 2018). While resolution of a question or primary jurisdiction is best done "prior to summary judgment practice," the fact remains that some factual development may be helpful for narrowing the questions and determining whether agency guidance is appropriate. *Chapman*, 2018 WL 11317096, at *2.

PCP's proposed questions are unspecific and underdeveloped, making it difficult to determine whether the second factor (i.e. whether the answer is a matter within agency discretion) weighs for or against them. The questions hint towards specific practices of Corman's that they believe are unreasonable, but PCP has presented no evidence of these practices at this stage. For example, PCP states that there is a "lack of information in invoicing" that is unreasonable under

8

relevant regulations but does not specify what information is lacking. (ECF No. 33, 12.) PCP's first question (regarding whether Corman can impose demurrage fees on them where they have no agreement to be liable for fees) seems premised on an active fact dispute between all the parties that could be easily answered through traditional discovery.[1] *See CSX Transportation, Inc.*, 2017 WL 3106284, at *5 (declining to stay in part due to the record "suggest[ing] that Piper may have contractually assumed liability for the demurrage charges that CSX seeks in this case.") Multiple questions generically ask whether Corman's practices or rates are "reasonable" without specifying the practices or rates to which they refer. Later questions speculate about whether it would be reasonable to assess PCP demurrage charges *if* Corman failed to provide switching services without providing any factual support for the failure. The last question asks STB whether PCP's liability would be excused under Corman's tariff due to "COVID-19 lockdowns, supply chain issues, and/or union workers' rights, weather impediments, or other like causes beyond PCP's and/or Mallory's reasonable control?" (ECF No. 33, 13.) This question does not establish how these large-scale events affected PCP specifically, let alone whether they affected them at all, and would seemingly involve a straightforward application of Corman's tariff, a matter that is directly within the Court's traditional role. *Consolidated Rail Corp. v. Landsdale Warehouse Co., Inc.*, CIV. A. No. 89-8085, 1990 WL 63743, at *7 (E.D. Pa. May 8, 1990) (interpreting and applying tariff). PCP is not required to prove its case to obtain a stay and referral, but must present some support for the relevance of their questions in order to ensure against undue delay or unwarranted application of primary jurisdiction. Overall, given the lack of factual development in this record, the Court does not believe the second factor weighs in favor of a stay.

The Court agrees with Corman that, at this stage, staying and referring these questions to

---

[1] Mallory alleges that an agreement exists whereby PCP would pay demurrage fees and charges. (ECF No. 54, 18 – 19.)

9

the STB is premature. The questions proposed assume facts not established in the record as well as actively contested premises regarding the underlying nature of the dispute. There is precedent for declining to stay where "the record in [the] case is not sufficiently clear to establish that the case falls within the primary jurisdiction of the [agency]." *Crain*, 399 F.2d at 874. PCP did not submit a declaration or cite any specific issues of first impression, at many points their proposed questions are unclear about which of Corman's practices they believe are unreasonable. However, this Order should not be taken as a foreclosure of future primary jurisdiction arguments. Such a broad ruling would be similarly premature. After factual development, the Court would not be surprised if questions falling within the primary jurisdiction of the STB regarding the reasonableness of Corman's tariff and demurrage practices arise. At that time, with narrowed and specific questions, the Court reserves the right to consider the issue again upon motion.

### IV.   CONCLUSION

Accordingly, the motion is hereby **DENIED** without prejudice. The case should proceed to general discovery. The parties are free to file a renewed Motion to Stay and Refer after the record has developed, the issues have narrowed, and the questions presented are specific and supported by that record. The Court will soon set a Scheduling Conference by separate notice so that the case may proceed in earnest.

**IT IS SO ORDERED** this 11th day of July, 2023.

*s/John T. Fowlkes, Jr.*
**JOHN THOMAS FOWLKES, JR.**
**UNITED STATES DISTRICT JUDGE**